UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERONE MCDOUGALD,

    Plaintiff,

v.

RON ERDOS, et al.,

    Defendants.

Case No. 1:17-cv-95

Dlott, J.
Bowman, M.J.

# REPORT AND RECOMMENDATION

Plaintiff is a prisoner at the Southern Ohio Correctional Institution ("SOCF") and frequent litigant in this Court.[1] This civil rights action is now before the Court on Defendants' (Lt. Brad Dyer and C/O Ryan Andre) Motion for Summary Judgment.

## I. Background

Plaintiff is currently in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and is serving his prison sentence at Southern Ohio Correctional Institution ("SOCF"), in Lucasville, Ohio.

---

[1] *See, e.g.,* Case Nos: 1:16-cv-1099 (claims regarding use of pepper spray and alleging denial of medical care); 1:08-cv-744 (claim of excessive force during arrest); 1:16-cv-317 (First Amendment retaliation claims); 1:16-cv-497 (Eighth Amendment claims regarding use of pepper spray on multiple dates); 1:16-CV-500 (claim relating to medical care for colitis, including allegedly prescribed high calorie diet); 1:16-cv-633 (case transferred to Eastern Division, reopened as 2:16-cv-545); 1:16-cv-900 (claims regarding use of pepper spray and retaliation); 1:17-cv-72 (above-captioned case regarding involuntary blood draw); 1:17-cv-91 (alleged violation of due process rights in RIB hearing, and retaliation claim); 1:17-cv-95 (claim regarding use of pepper spray); 1:17-cv-124 (claim regarding use of pepper spray); 1:17-cv-127 (claim regarding "flood of biocontaminate" in cell); 1:17-cv-196 (retaliation claim); 1:17-cv-464 (involuntary blood draw), 1:18-cv-80 (pepper spray incident of August 7, 2017); 1:18-cv-93 (September 28, 2017 alleged attack and denial of medical treatment); 1:18-cv-135 (same September 28, 2017 incident); 2:16-cv-545 (claim regarding failure to provide kosher meals). In addition, Plaintiff previously has filed two petitions for habeas corpus: Case Nos. 1:11-cv-790; 1:16-cv-565. The undersigned recently noted in Case No. 1:16-cv-500 that Plaintiff appears to be equally litigious in state court.

On March 9, 2017, McDougald filed his complaint (Doc. 5, "Complaint") alleging various violations of his Eighth and Fourteenth Amendment rights relating to a pepper spray ("use of force") deployed against him on December 27, 2016 while incarcerated at SOCF. McDougald's allegations include: Deliberate Indifference to Plaintiff's Medical Needs (C/O Andre, Lt. Dyer and Nurse John Doe), Deliberate Indifference to Plaintiff's Safety (C/O Andre, Warden Erdos and Deputy Warden Cool) [2] and Excessive Force (Lt. Dyer). Following the initial screening (Doc. 6), all claims were dismissed, including claims against defendants in their official capacity, except for Plaintiff's Eighth Amendment claims against Defendants Lt. Brad Dyer, C/O Ryan Andre and Nurse John Doe, based on Plaintiff's allegation that Lt. Dyer used excessive force against him and the Defendants were indifferent to his medical needs. (Doc. 6 at PageID 41). McDougald sues Lt. Dyer, Andre, and Nurse John Doe in their individual capacity for $100,000 each.

McDougald alleges that on December 27, 2016, Defendants C/O Andre and Lt. Dyer approached his cell and Lt. Dyer sprayed him with mace for no reason. (Doc. 5 at PageID 30). McDougald claims that the cell door was shut and that he was left to suffocate from the maze. *Id.* McDougald claims he was left in the cell with difficulty breathing and that his requests for help were ignored. *Id.* McDougald alleges fifteen minutes later, Lt. Dyer reopened the cell door. *Id.* Plaintiff claims he informed Lt. Dyer that he needed

---

[2] Defendants have identified Nurse John Doe as Nurse Malt. (Doc. 22 at PageID 94). Plaintiff has not served Nurse Malt. *Id.* However, there does not appear to be evidence to indicate that Nurse Malt violated McDougald's Eighth Amendment rights. Defendants support this statement by stating that "[T]he records indicate no violations of constitutional rights occurred as alleged by McDougald that the nurse was deliberately indifferent to his medical care. The medical examination report prepared by the nurse indicates McDougald wanted decontamination, the nurse reported he advised inmate to take a shower and follow up with medical as needed. The report also provided that in the objective findings section of the medical report "Healthy looking adult male, A and 0 x 3, resp even and unlabored, steady gait noted, no acute injuries noted on visual examination." Finally, the report provides that McDougald was returned to segregation. See UoF packet addressed specifically, *infra*. (Nurses's MER at Def. Ex. A, UoF Packet, pp 008-009)." *Id.*

2

medical attention and decontamination (wash-up). *Id.* Plaintiff alleges that after he was escorted to another cell, Nurse Malt arrived. *Id.* Plaintiff alleges that Nurse Malt just peaked through the cell window and walked off. *Id.* McDougald claims that his Eighth Amendment rights were violated for deliberate indifference by Defendants to his medical needs by failing to decontaminate (wash-up) and provide adequate medical attention. *Id.*

Defendants', however, set forth a different version of facts relating to this incident. Notably, on December 27, 2016, Defendants contend that McDougald, spat on C/O Jordan in the face and again on his back. (Doc. 22 at PageID 97). Lt. Dyer then reported to McDougald's cell and ordered the outer cell door opened. *Id.* Defendants allege that McDougald then spat out the crack of the door. *Id.* Lt. Dyer then sprayed maze in the facial area of McDougald. *Id.* A few minutes later, Lt. Dyer and C/O Andre returned to McDougald's cell and Lt. Dyer ordered McDougald to the cell front, which he complied. *Id.* Lt. Dyer, alongside C/O Andre, escorted McDougald to another cell. Upon arriving at the new cell, Lt. Dyer asked McDougald if he would like a shower to decontaminate (wash-up). *Id.* McDougald refused and stated "just put me in my cell, I got another law suit." *Id.*

Based on the foregoing, Defendants assert that they acted reasonably under the circumstance and are therefore entitled to judgment as a matter of law. The undersigned agrees.

## II. Defendants' Motion for Summary Judgment is Well-Taken

### A. *Standard of Review*

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v.*

3

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street,* 886 F.2d at 1478 (citing *Celotex* and *Anderson*). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

### B. Eighth Amendment Claims

As noted above, Plaintiff claims that Defendants violated his constitutional rights to be free from excessive force by deploying pepper spray into his cell in December 2016. Plaintiff further contends that after the pepper spray incident, Defendants were deliberately indifferent to his medical needs.

#### 1. Legal Standard for Excessive Force under the Eighth Amendment

A prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury...." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson,* 503 U.S. at 7; *Whitley,* 475 U.S. at 320-321.

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell v. McKinney,* 759 F.3d 573, 580-81 (6th Cir. 2014) (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm ... contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins,* 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 9). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson,* 503 U.S. at 7).

Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres,* 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell,* 93 Fed.Appx. 723, 725 (6th Cir. 2004)). Accordingly, the Sixth Circuit has found no Eighth Amendment violation in numerous cases involving "the use of ... chemical agents against recalcitrant prisoners." *Id.* (quoting *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jennings,* 93 Fed.Appx. at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."). *See also Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918, at *7 (S.D. Ohio Apr. 29, 2014) (Report and Recommendation) (Bowman, M.J.), *adopted,* 2014 WL 2172894 (S.D. Ohio May 23, 2014) (the defendant was entitled to qualified immunity because "no reasonable officer would have understood that it violated the Eighth Amendment to

6

reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record), in order to force a threatening inmate to retreat and restore order."). *But see Williams v. Curtin,* 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

2. *Legal Standard for Denial of Medical under the Eighth Amendment*

To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Brooks v. Celeste,* 39 F.3d 125, 127 (6th Cir. 1994). A constitutional claim for denial of medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison Cty.,* 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer,* 511 U.S. at 834; *Estelle*, 429 U.S. at 104). A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 Fed.Appx. 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer,* 511 U.S. at 834. "[T]he official must both be aware of facts from which the inference could be drawn that

7

a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 Fed.Appx. at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health: (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837.

*3. Analysis*

In opposing Defendant's properly supported motion for summary judgment, Plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011). He "cannot rest on the mere allegations of the pleadings." *Id.*

Here, McDougald contends he was subject to excessive force by Defendants for pepper spraying him for "no reason" on December 27, 2016 in violation of his Eighth Amendment rights to be free from cruel and unusual punishment. (Doc. 5, Complaint, PageID 30-32). Plaintiff has failed to point to direct evidence, beyond his own assertions to contradict the evidence presented by Defendants

Notably, the record establishes that Lt. Dyer deployed a short burst of O/C spray after Plaintiff spat at him. Defendants presented evidence to show that Plaintiff was only sprayed by Lt. Dyer after he violated Rule 5, 21, 26 and 60 of the Inmate Rules of Conduct. (Doc. 22-2 at PageID 125-26; Doc. 22-3 at PageID 133). Further, Defendants have

provided evidence that the Rules Infraction Board reviewed McDougald's appeal and concluded that McDougald had in fact violated the rules. (Doc. 22-2 at PageID 129). The Warden affirmed the Rules Infraction Board decision. (Doc. 22-2 at PageID 130).

Thus, the undersigned agrees that McDougald's own conduct brought about this incident – spitting at an officer, thereby creating a penological safety issue and discipline situation that required Defendants to act. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted). The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21. The evidence establishes that the use of pepper spray by Defendant Dyer was a reasonable and minimal response to a noncompliant McDougald. Defendants were entitled to use force to maintain order. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Notably, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene*, No. 99-3179, 1999 U.S.App. LEXIS 34054, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed); White v. Fowler, 881 F.2d 1078 (6th Cir. 1989) (holding that officer was entitled to summary judgment on Plaintiff's

9

excessive force claim even though Plaintiff was shackled when officer sprayed him with mace on a bus because the officer needed to restore "discipline and security to the bus"). The undersigned agrees that Defendants acted reasonable and in good faith to restore discipline by deploying O/C spray after Plaintiff spat on Lt. Dyer and C/O Jordan. Thus, Defendants did not exercise excessive force by pepper spraying McDougald after he violated institutional rules.

Plaintiff's claim for deliberate indifference to his medical needs also fails as a matter of law. In order to prevail on a violation of a prisoner's rights to medical care the inmate must allege facts evidencing deliberate indifference on the part of the defendant to the prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). While deliberate indifference does not require proof of intention to inflict pain or a detailed inquiry into the state of mind of the prison official, the official's acts or omissions must demonstrate a knowing indifference to the prisoner's serious medical needs. *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993).

McDougald alleges that following the OC spray Defendants ignored his requests for medical attention and decontamination (wash-up). *Id.* McDougald claims that his Eighth Amendment rights were violated for deliberately being indifferent to his medical needs. *Id.*

However, the evidence of record establishes that Defendants were *not* deliberately indifferent to McDougald's medical needs following the pepper spray incident. The record shows that McDougald was offered decontamination and was seen by a nurse shortly after he was sprayed. (*See* Doc. 22-1 at PageID 117-18, Incident Reports from Prison Officials). (*See also* Doc. 22-1 at PageID 121-22, Medical Exam Report).

Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety; that is, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1984). Negligence in regard to the prisoner's medical needs does not amount to deliberate indifference*. Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir. 1993). In opposing defendant's properly supported motion for summary judgment, plaintiff must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston*, 832 F. Supp.2d at 849. He "cannot rest on the mere allegations of the pleadings." *Id.*

Here, Plaintiff's motion for summary judgment as well as his response in opposition to defendants' motion for summary judgment rests primarily on self- serving unsworn statements to support his denial of medical care claim. Notably, Plaintiff claims that after officers sprayed him with pepper spray, he was left in an unventilated cell with the door shut gasping for air and choking. (Doc. 29 at 4). Similar to his claim for excessive force, Plaintiff simply asserts that Defendants gave false statements on the incident reports as well as their answers to Plaintiff's interrogatories. As such, Plaintiff failed to present any evidence to establish that he was denied proper medical care and/or that Defendants were deliberately indifferent to his serious medical needs. see *Maston*, 832 F. Supp.2d at 851-52 (holding that a pro se party cannot rely on allegations or denials in unsworn filings when opposing a motion for summary judgment).

To the contrary, Defendants have provided ample evidence that Defendants offered decontamination (wash-up) and medical care to McDougald. *See* Lt Dyer's

Incident Report Doc. 22-1 at PageID 117, C/O Andre Doc. 22-1 at PageID 118, Medical Exam Report Doc. 22-1 at PageID 121.

Thus, because Plaintiff has failed to submit any evidence creating a genuine issue of fact as to whether Defendants' use of force was reasonable under the circumstances and whether Defendants denied him proper medical treatment, summary judgment should be granted to Defendants on Plaintiff's Eighth Amendment excessive force and denial of medical care claims.

*C. Qualified Immunity*

In their last argument in favor of summary judgment, Defendants assert that they are entitled to qualified immunity on claims filed against them in their individual capacities because they acted reasonably under the circumstances. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224,

229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). See also *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231. Here, the record evidence clearly established that any use of force by Defendants was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. The record further establishes that Defendants were not deliberately indifferent to his serious medical needs. As such, Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same. Therefore, the Defendants are immune from Plaintiff's claims for excessive force and are entitled to judgment as a matter of law.

### III. Conclusion and Recommendation

For these reasons, is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 22) be **GRANTED**, all remaining pending motions (Doc. 38) be **DENIED as MOOT**; and this case be **CLOSED**.

                                     */s/ Stephanie K. Bowman*
                                     Stephanie K. Bowman
                                     United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERONE MCDOUGALD,                      Case No. 1:17-cv-95

    Plaintiff,                                    Dlott, J.
                                               Bowman, M.J.
    v.

RON ERDOS, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).